## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WANDA CLARK, | C.A. No.: |
| *Plaintiff*, | **TRIAL BY JURY DEMANDED** |
| v. | |
| WAL-MART ASSOCIATES, INC., a Delaware corporation, | **COMPLAINT** |
| *Defendant*. | |

Plaintiff Wanda Clark brings this action for damages and demand for a jury trial against Defendant Wal-Mart Associates, Inc.  In support thereof, Plaintiff states as follows:

### Parties / Jurisdiction / Venue

1.      Plaintiff Wanda Clark ("Plaintiff") is a United States citizen who resides at 60 Mudstone Road, Dover, Delaware 19904.

2.      Defendant Wal-Mart Associates, Inc. ("Defendant") is a Delaware corporation whose registered agent for service of process is The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

3.      Plaintiff brings this action to redress the wrongs done to her by Defendant's discrimination and retaliation against her on the basis of her disability under the Americans with Disabilities Act ("ADA"), Defendant's discrimination and retaliation against her based on her disability under the Delaware Persons with

Disabilities Employment Protections Act ("DPDEPA"), and Defendant's retaliation against her for exercising her rights under the Family and Medical Leave Act ("FMLA").

4. Original jurisdiction is conferred on this Court for Plaintiff's ADA claim under 42 U.S.C. § 12117(a), and for Plaintiff's FMLA claim under 29 U.S.C. §2617(a)(2), *et seq.,* as Defendant is an employer within the State of Delaware and within the jurisdictional coverage of those Acts. Original jurisdiction is also conferred on this Court by 28 U.S.C. § 1331.

5. The Court has supplemental jurisdiction of Plaintiff's claims under the Delaware Persons with Disabilities Employment Protections Act ("DPDEPA"), 19 *Del. C.* § 720 *et seq.*, pursuant to 28 U.S.C. § 1367, as this claim is so related to Plaintiff's ADA claim that it forms part of the same case or controversy.

6. Venue for this action lies in the District of Delaware pursuant to 28 U.S.C. § 1391(b), as the acts alleged as the basis for this claim took place within the boundaries of that District.

### Conditions Precedent

7. Plaintiff timely submitted a complaint of discrimination on the basis of her disability to the Delaware Department of Labor ("DDOL") (charge number CLA121624) and the Equal Employment Opportunity Commission ("EEOC") (charge number 17C-2025-00191).

8. Plaintiff received a Final Determination and Right to Sue Notice from the DDOL for charge number CLA121624 on October 29, 2025.

9. Plaintiff received a Notice of Right to Sue from the EEOC for charge number 17C-2025-00191 on December 30, 2025.

10. Plaintiff has timely filed this Complaint within ninety (90) days of receiving the aforementioned Notice of Right to Sue.

**Statement of Facts**

11. At all times relevant to this Complaint, Plaintiff was an "eligible employee" as that term is defined by the FMLA, 29 U.S.C. §2611(2)(a), in that she had been employed by Defendant for at least twelve (12) months and for at least 1,250 hours of service during the 12 months prior to the exercise of her rights under the FMLA and/or her eligibility to exercise her rights under the FMLA.

12. Plaintiff began full-time employment as an employee of Defendant, working at Sam's Club, in or about August 2021.

13. Plaintiff continued her employment with Defendant until her employment was terminated on or about February 28, 2024.

14. Prior to her termination, Plaintiff was qualified for her job position and satisfactorily performed all duties of her position.

15. Plaintiff was approved for intermittent leave under the FMLA in November 2022, from October 7, 2022, through September 21, 2023, which allowed

3

for absences for 2 episodes per month and an absence for treatment one time per month.

16.     On or about December 7, 2022, Plaintiff was summoned by Member Services Lead Jasmine Ross ("Ross") to meet with her, Store Manager Chris Forton ("Forton"), Manager Ryan Flaherty ("Flaherty"), and Manager Wanda Rouse ("Rouse") to confirm Plaintiff's intermittent FMLA leave covered only two days per month for her medical condition and one day per month for treatment of her medical condition.

17.     During the meeting, Rouse stated that Plaintiff needed to go out on disability.

18.     On or about December 15, 2022, Ross asked Plaintiff if she had enough PPTO (protected paid time off) time to remove points before being placed in the Workday Coaching system. Further investigation revealed that Plaintiff's absences were approved and not subject to entry into the Workday System.

19.     Despite the miscalculation by management, Rouse informed Plaintiff that her and Forton felt they had excused more than enough time and once again suggested that Plaintiff go out on disability.

20.     On or about January 20, 2023, Plaintiff was summoned to the office by Member Services Lead Brandon Burgos ("Burgos") and Manager Leona Sammons ("Sammons") and informed she had accrued 8 1/2 absence points.

21.   Plaintiff explained she had only accrued 2 1/2 points, that she had discussed the issue with Rouse, and that points given for approved absences were pending removal.

22.   At the end of the meeting, Sammons suggested that Plaintiff should go out on disability.

23.   Plaintiff told Sammons that she could work, that some days were harder than others due to the pain, and advised Sammons that she was going to seek an accommodation to use a stool.

24.   Sammons told Plaintiff that Defendant did not allow accommodations for stools and again suggested that Plaintiff go out on disability.

25.   After being approved for intermittent FMLA leave, Plaintiff was continually harassed by Rouse and other management employees.

26.   At a meeting on or about January 21, 2023, to discuss Plaintiff's missing work days, Rouse stated she had approved more than enough points for Plaintiff.

27.   Plaintiff explained to Rouse that removing points for approved FMLA leave was not a favor, but rather a requirement.

28.    On or about November 27, 2023, Plaintiff's intermittent FMLA leave was increased to cover absences for three episodes per month and two episodes per month for treatment.

5

29.    At all times relative to this complaint, Plaintiff had a "disability" as that term is defined by 42 U.S.C. § 12102(1), *i.e.*, Plaintiff had a physical impairment that substantially limited one or more of her major life activities, and/or she had a record of such impairments, and/or she has been regarded by Defendants as having such impairments. Specifically, Plaintiff suffers from Fibromyalgia, which affects her balance and makes standing for long periods of time difficult.

30.    Plaintiff requested that she be allowed to use a seat for intermittent use as an accommodation.

31.    The requested accommodation was approved, but Plaintiff was only allowed to use the stool for sitting while at the membership desk, entrance, or exit.

32.    Plaintiff was placed at the membership desk, entrance, or exit solely to cover breaks of other employees.

33.    Plaintiff attempted to use the stool for kneeling while working the register, but this was difficult and resulted in her standing at the cash register until she was in pain.

34.    Although a stool accommodation was provided, Plaintiff was not assigned to areas where she could effectively use the stool and therefore benefit from the accommodation.

35.    Plaintiff called in sick on February 14, 2024, for an issue related to her FMLA leave.

36.    On February 16, 2024, Plaintiff was summoned to the cash office by Sammons and was told that Rouse said Plaintiff was missing too much time, that she could not call out anymore, and that if she were not feeling well, she would need to report to work and then ask to be sent home.

37.    Sammons further stated that if Plaintiff missed another day, she was looking at termination.

38.    Plaintiff explained to Sammons that she only had two points and that she was covered by intermittent FMLA leave for five days.

39.    Sammons stated she was only approved for three days per month.

40.    Plaintiff forwarded an email to Sammons showing she was approved for five days per month.

41.    On February 28, 2024, Manager Shannon Sickles verbally notified Plaintiff that her employment was terminated with Flaherty as a witness.

42.    Approximately one week later, Plaintiff returned to Sam's Club to retrieve her termination letter.

43.    The reason verbally proffered by Defendant for Plaintiff's termination, *i.e.,* excess points in violation of Defendant's absenteeism policy, was untrue, pretextual, and intended to mask the true reasons for Plaintiff's termination, *i.e.,* discrimination and retaliation against Plaintiff for pursuing her rights under the FMLA, ADA, and the DPDEPA.

7

44.    Defendant is liable for the actions of its agents and employees as set forth in this Complaint under the principles of agency and the doctrine of *respondeat superior* and pursuant to the Defendant's ratification of its agents' and employees' wrongful actions.

45.    The wrongful acts committed by Defendant, acting by and through its agents and employees, as stated hereinabove, were willful, wanton, and committed in bad faith.

46.    As a direct result of the actions of Defendant, Plaintiff has suffered damages, including, but not limited to, emotional distress, pain and suffering, mental anguish, humiliation, and lost wages.

## COUNT I – AMERICANS WITH DISABILITIES ACT

47.    Plaintiff restates and hereby incorporates by reference paragraphs 1 through 46 hereinabove.

48.    Plaintiff informed Defendant that she had a disability and requested an accommodation to help her cope with her fibromyalgia.

49.    Defendant failed to engage in an interactive process to determine what other types of accommodations would be available.

50.    Defendant failed to accommodate Plaintiff's disability, instead opting to discipline Plaintiff with the goal of eventually terminating her employment.

51. By committing the aforementioned acts, specifically by failing to enter into an interactive process and failing to properly accommodate Plaintiff's disability, Defendant discriminated against Plaintiff in violation of the ADA, 42 U.S.C. § 12101 *et seq.*

52. By committing the aforementioned acts, specifically by terminating Plaintiff's employment, Defendant retaliated against Plaintiff on the basis of her disability in violation of the ADA, 42 U.S.C. § 12101 *et seq.*

53. As a direct result of the discriminatory and wrongful conduct of Defendant, Plaintiff has suffered damages, including, but not limited to, emotional distress, pain and suffering, mental anguish, humiliation, and lost wages.

WHEREFORE, Plaintiff demands judgment against the Defendant for:

a) back pay, including interest;

b) reinstatement, if feasible, or in the alternative, front pay;

c) compensatory damages, including damages for emotional and physical pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and all other non-pecuniary damages;

d) punitive damages;

e) pre-judgment and post-judgment interest;

f) attorney's fees; and

g) any other relief that this Court deems just.

## COUNT II - DPDEPA

54.    Plaintiff hereby restates and incorporates by reference paragraphs 1 through 53 hereinabove.

55.    Plaintiff informed Defendant that she had a disability and requested an accommodation to help her cope with her fibromyalgia.

56.    Defendant failed to engage in an interactive process to determine what other types of accommodations would be available.

57.    Defendant failed to accommodate Plaintiff's disability, instead opting to discipline Plaintiff with the goal of eventually terminating her employment.

58.    By committing the aforementioned acts, specifically by failing to enter into an interactive process and failing to accommodate Plaintiff's disability, Defendant discriminated against Plaintiff in violation of the Delaware Persons with Disabilities Employment Protections Act ("DPDEPA"), 19 *Del. C.* § 720 *et seq.*

59.    By committing the aforementioned acts, specifically by terminating Plaintiff's employment, Defendant retaliated against Plaintiff on the basis of her disability in violation of the Delaware Persons with Disabilities Employment Protections Act ("DPDEPA"), 19 *Del. C.* § 720 *et seq.*

60.    As a direct result of the discriminatory and wrongful conduct of Defendant, Plaintiff has suffered damages, including, but not limited to, emotional distress, pain and suffering, mental anguish, humiliation, and lost wages.

10

WHEREFORE, Plaintiff demands judgment against the Defendant for:

    a) back pay, including interest;

    b) reinstatement, if feasible, or in the alternative, front pay;

    c) compensatory damages, including damages for emotional and physical pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and all other non-pecuniary damages;

    d) punitive damages;

    e) pre-judgment and post-judgment interest;

    f) attorney's fees; and

    g) any other relief that this Court deems just.

## COUNT III – FMLA

61. Plaintiff hereby restates and incorporates by reference paragraphs 1 through 60 hereinabove.

62. After receiving approved intermittent leave under the FMLA, Plaintiff's working conditions became increasingly hostile and retaliatory.

63. Plaintiff was continually harassed for committing minor or perceived infractions for which other employees were not punished.

64. Plaintiff was told she was taking too much leave and should take disability leave.

11

65. By terminating Plaintiff's employment, Defendant intentionally and willfully retaliated against Plaintiff for the exercise of her rights under the FMLA in violation of the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq*.

66. As a direct result of Defendant's retaliatory conduct, Plaintiff has suffered damages, including, but not limited to, lost wages.

WHEREFORE, Plaintiff demands judgment against Defendant for:

(a) any and all damages provided pursuant to 29 U.S.C. §2617(a)(1), including but not limited to lost wages, salary, employment benefits, back pay, front pay, interest, liquidated damages, and any and all other available pecuniary damages;

(b) pre-judgment and post-judgment interest;

(c) attorney's fees and costs;

(d) Reinstatement, if feasible, or in the alternative, front pay; and

(e) any other relief, whether legal or equitable, that this Court deems just.

[signature block follows]

12

SCHMITTINGER & RODRIGUEZ, P.A.

By: */s/ Gary E. Junge*
    Gary E. Junge, Esq.
    Bar I.D. # 6169
    414 South State Street
    P.O. Box 497
    Dover, Delaware 19903-0497
    (302) 674-0140
    Attorney for Plaintiff

Dated: March 26, 2026