IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SOLENO THERAPEUTICS, INC. and NEUROCRINE BIOSCIENCES, INC., | ) | |
| Plaintiffs, | ) | |
| v. | ) | C.A. No. _______________ |
| DR. REDDY'S LABORATORIES, INC. and DR. REDDY'S LABORATORIES LTD., | ) | |
| Defendants. | ) | |

**COMPLAINT**

Plaintiffs Soleno Therapeutics, Inc. ("Soleno") and Neurocrine Biosciences, Inc. ("Neurocrine") (collectively, "Plaintiffs"), by their undersigned attorneys, bring this action against Defendants Dr. Reddy's Laboratories, Inc. and Dr. Reddy's Laboratories Ltd. (collectively, "Defendants" or "DRL"), and hereby allege as follows:

**NATURE OF THE ACTION**

1. This is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, and in particular under 35 U.S.C. § 271(e)(2). This action arises from DRL's submission of Abbreviated New Drug Application ("ANDA") No. 221734 to the U.S. Food and Drug Administration ("FDA") seeking approval to market purported generic versions of Plaintiffs' highly successful pharmaceutical product VYKAT® XR, prior to the expiration of Plaintiffs' U.S. Patent Nos. 7,799,777 (the "'777 Patent"); 9,757,384 (the "'384 Patent"); 12,178,823 (the "'823 Patent"); 12,343,348 (the "'348 Patent"); and 12,419,895 (the "'895 Patent") (collectively, "the Asserted Patents").

**VYKAT® XR**

2. VYKAT® XR (diazoxide choline) is a groundbreaking extended-release oral tablet that provides sustained drug exposure with once-daily dosing and represents an important therapeutic advance for the treatment of hyperphagia in adults and pediatric patients four years of age and older with Prader-Willi syndrome ("PWS"). VYKAT® XR is the first and only treatment approved by FDA for hyperphagia in PWS, and FDA granted it Breakthrough Therapy designation.

3. PWS is a rare, complex, and life-threatening genetic disorder caused by the loss of function of genes on chromosome 15q11–q13. This genetic abnormality disrupts hypothalamic development and function, producing impaired appetite regulation, chronic and severe hunger, food-seeking behavior, and behavioral and metabolic complications. The hallmark of the disease is hyperphagia. PWS patients feel they are starving even when they are not, and they may steal food, dig through trash for food, consume spoiled food or non-food items, and become angry if denied food. Hyperphagia is the most debilitating symptom of PWS. Before VYKAT® XR, no pharmacological treatment for hyperphagia in PWS had been approved, and numerous attempts by others had failed.

4. VYKAT® XR was developed through the innovative work of scientists at Soleno and its predecessor, Essentialis, Inc. ("Essentialis"), who invested years of research and millions of dollars to develop a treatment for PWS at considerable commercial risk. Essentialis scientists developed salts of potassium ATP channel openers, including diazoxide choline. Although diazoxide had been known since the 1960s and approved for hypertension and hypoglycemia in the 1970s, no one had used it to treat hyperphagia in PWS. Clinical data showed that patients treated with diazoxide choline experienced more than twice the improvement in

hyperphagia compared to placebo. VYKAT® XR thus became the first drug to safely and effectively treat hyperphagia in PWS patients.

5. On March 7, 2017, Soleno (then known as Capnia, Inc.) completed its acquisition of Essentialis. On May 18, 2026, Neurocrine completed its acquisition of Soleno for $2.9 billion, in part because VYKAT® XR is "well positioned as the foundational first-line therapy for PWS and is supported by a strong intellectual property estate." *Neurocrine to Acquire Soleno Therapeutics, Expanding Its Endocrinology and Rare Disease Portfolio*, Soleno Therapeutics Press Release (Apr. 6, 2026), https://investors.soleno.life/news-releases/news-release-details/neurocrine-acquire-soleno-therapeutics-expanding-its. Through these transactions, Plaintiffs carried on Essentialis's legacy of research into treatments for rare diseases that have critical impacts on patients' and families' lives.

6. On March 26, 2025, FDA approved New Drug Application ("NDA") No. 216665 for VYKAT® XR (the "VYKAT® XR NDA"). FDA granted VYKAT® XR Orphan Drug exclusivity, recognizing that it is the first diazoxide drug approved to treat PWS and that there is a critical unmet need for therapies for this rare disease.

7. Soleno markets VYKAT® XR in the United States pursuant to the VYKAT® XR NDA and has done so since April 2025. Plaintiffs continue to invest in the clinical development of VYKAT® XR, including through ongoing open-label and observational studies of VYKAT® XR in PWS patients.

8. VYKAT® XR currently has New Product exclusivity until March 26, 2028, and Orphan Drug exclusivity until March 26, 2032.

## THE PARTIES

9. Plaintiff Soleno is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business at 100 Marine Parkway, Suite 400, Redwood City, California 94065.

10. Soleno holds various exclusive rights to the Asserted Patents, including the exclusive rights to make, use, sell, and distribute products incorporating or leveraging the Asserted Patents and to otherwise commercially exploit the Asserted Patents. Soleno holds NDA No. 216665 for VYKAT® XR.

11. Plaintiff Neurocrine is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business at 6027 Edgewood Bend Court, San Diego, California 92130.

12. Neurocrine is the owner of the Asserted Patents.

13. On information and belief, Defendant Dr. Reddy's Laboratories Ltd. is a corporation organized and existing under the laws of India, with a principal place of business at 8-2 337, Road No. 3, Banjara Hills, Hyderabad, Telangana 500034, India. On information and belief, Dr. Reddy's Laboratories Ltd. is in the business of, among other things, manufacturing and selling generic versions of branded pharmaceutical drugs through various operating subsidiaries throughout the United States, including Delaware.

14. On information and belief, Defendant Dr. Reddy's Laboratories, Inc. is a corporation organized and existing under the laws of the State of New Jersey, having a place of business at 107 College Road East, Princeton, New Jersey 08540. On information and belief, Dr. Reddy's Laboratories, Inc. is a wholly owned subsidiary of Dr. Reddy's Laboratories Ltd. On information and belief, Dr. Reddy's Laboratories, Inc. is in the business of, among other things,

manufacturing and selling generic versions of branded pharmaceutical drugs through various operating subsidiaries throughout the United States, including in Delaware.

15. On information and belief, Defendants collaborate with respect to the development, regulatory approval, marketing, sale, and/or distribution of pharmaceutical products. On further information and belief, Defendants are agents of each other and/or operate in concert as integrated parts of the same business group.

16. DRL submitted ANDA No. 221734 ("DRL's ANDA"), which seeks approval to engage in the commercial manufacture, use, sale, and/or offer for sale of purported generic versions of VYKAT® XR 25 mg, 75 mg, and 150 mg extended-release tablets ("DRL's ANDA Products") and/or to import DRL's ANDA Products into the United States prior to the expiration of the Asserted Patents.

17. On information and belief, Defendants acted in concert to develop DRL's ANDA Products that are the subject of DRL's ANDA and to seek regulatory approval from FDA to market and sell DRL's ANDA Products throughout the United States, including in Delaware.

18. On information and belief, Defendants intend to benefit directly if DRL's ANDA is approved by participating in the development, regulatory approval, marketing, manufacture, importation, distribution, and/or sale of DRL's ANDA Products.

19. On information and belief, Defendants intend to act collaboratively to obtain approval for DRL's ANDA, and, in the event FDA approves DRL's ANDA, to commercially manufacture, use, offer for sale, sell, and/or import DRL's ANDA Products in the United States, including in Delaware.

## **JURISDICTION AND VENUE**

20. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

21. There is an actual case or controversy between the parties because, *inter alia*, Defendants submitted DRL's ANDA under section 505(j) of the Federal Food, Drug, & Cosmetic Act ("FDCA") for VYKAT® XR (diazoxide choline), which is claimed by—or the use of which is claimed by—the Asserted Patents.

22. This Court has personal jurisdiction over Dr. Reddy's Laboratories Ltd. under Federal Rule of Civil Procedure 4(k)(2) because Dr. Reddy's Laboratories Ltd. is not subject to jurisdiction in any state's courts of general jurisdiction and exercising jurisdiction over it is consistent with the United States Constitution and laws.

23. This Court has personal jurisdiction over Defendants because, *inter alia*, Defendants, themselves and through their affiliates and subsidiaries, have purposefully availed themselves of the benefits and protections of Delaware's laws such that they should reasonably anticipate being haled into court here. On information and belief, Defendants, themselves and through their affiliates and subsidiaries, develop, manufacture, import, market, offer to sell, sell, and/or distribute a broad range of generic pharmaceutical products throughout the United States, including in Delaware, and therefore transact business within Delaware relating to Plaintiffs' claims, and/or have engaged in systematic and continuous business contacts within Delaware.

24. This Court has personal jurisdiction over Defendants because, among other things, on information and belief: (1) Defendants submitted DRL's ANDA for the purpose of seeking approval to engage in the commercial manufacture, use, sale, or offer for sale of DRL's ANDA Products in the United States, including in Delaware; and (2) upon approval of DRL's ANDA, Defendants, themselves and through their affiliates and subsidiaries, will market, distribute, offer for sale, sell, and/or import DRL's ANDA Products in the United States, including in Delaware, and will derive substantial revenue from the use or consumption of DRL's ANDA

Products in Delaware. On information and belief, upon approval of DRL's ANDA, DRL's ANDA Products will, among other things, be marketed, distributed, offered for sale, sold, and/or imported in Delaware; prescribed by physicians practicing in Delaware; dispensed by pharmacies located within Delaware; and/or used by patients in Delaware, all of which would have substantial effects on Delaware.

25. This Court has personal jurisdiction over Defendants because they regularly engage in patent litigation concerning their ANDA products in this District, do not contest personal jurisdiction in this District, and have purposefully availed themselves of the rights and benefits of this Court by asserting claims and/or counterclaims in this District. *See, e.g.*, *Bayer Healthcare Pharms. Inc. v. Dr. Reddy's Lab'ys, Ltd.*, C.A. No. 25-1299-JLH, D.I. 14 (D. Del. Jan. 28, 2026); *Horizon Therapeutics USA Inc. v. Dr. Reddy's Lab'ys, Ltd.*, C.A. No. 23-623-MN, D.I. 12 (D. Del. July 14, 2023); *Boehringer Ingelheim Pharms. Inc. v. Dr. Reddy's Lab'ys, Ltd.*, C.A. No. 22-1102-CFC, D.I. 9 (D. Del. Sept. 22, 2022).

26. For at least the above reasons, it would not be unfair or unreasonable for Defendants to litigate this action in this District, and Defendants are subject to personal jurisdiction in this District.

27. Venue is proper in this District as to Dr. Reddy's Laboratories Ltd. and Dr. Reddy's Laboratories, Inc. pursuant to 28 U.S.C. §§ 1391 and 1400(b) and/or Federal Rule of Civil Procedure 4(k)(2).

## THE ASSERTED PATENTS

28. The '777 Patent, entitled "Salts of potassium ATP channel openers and uses thereof," was duly and lawfully issued by the U.S. Patent and Trademark Office ("USPTO") on September 21, 2010. A true and correct copy of the '777 Patent is attached hereto as **Exhibit A**. The '777 Patent has been listed in connection with VYKAT® XR in the FDA publication *Approved*

*Drug Products with Therapeutic Equivalence Evaluations* (commonly known as the "Orange Book"). Plaintiffs own all substantial rights, title, and interest in and to the '777 Patent.

29. The '384 Patent, entitled "Methods for treating subjects with Prader-Willi syndrome or Smith-Magenis syndrome," was duly and lawfully issued by the USPTO on September 12, 2017. A true and correct copy of the '384 Patent is attached hereto as **Exhibit B**. The '384 Patent has been listed in connection with VYKAT® XR in the Orange Book with a use code of "REDUCING HYPERPHAGIC AGGRESSIVE BEHAVIORS IN PRADER-WILLI SYNDROME PATIENTS." Plaintiffs own all substantial rights, title, and interest in and to the '384 Patent.

30. The '823 Patent, entitled "Methods for treating subjects with Prader-Willi syndrome or Smith-Magenis syndrome," was duly and lawfully issued by the USPTO on December 31, 2024. A true and correct copy of the '823 Patent is attached hereto as **Exhibit C**. The '823 Patent has been listed in connection with VYKAT® XR in the Orange Book with a use code of "REDUCING HYPERPHAGIC AGGRESSIVE BEHAVIORS IN PRADER-WILLI SYNDROME PATIENTS." Plaintiffs own all substantial rights, title, and interest in and to the '823 Patent.

31. The '348 Patent, entitled "Methods for treating subjects with Prader-Willi syndrome or Smith-Magenis syndrome," was duly and lawfully issued by the USPTO on July 1, 2025. A true and correct copy of the '348 Patent is attached hereto as **Exhibit D**. The '348 Patent has been listed in connection with VYKAT® XR in the Orange Book with a use code of "TREATING HYPERPHAGIA AND REDUCING HYPERPHAGIC AGGRESSIVE BEHAVIORS IN PRADER-WILLI SYNDROME PATIENTS." Plaintiffs own all substantial rights, title, and interest in and to the '348 Patent.

32. The ’895 Patent, entitled “Methods for treating subjects with Prader-Willi syndrome,” was duly and lawfully issued by the USPTO on September 23, 2025. A true and correct copy of the ’895 Patent is attached hereto as **Exhibit E**. The ’895 Patent has been listed in connection with VYKAT® XR in the Orange Book with a use code of “TREATING HYPERPHAGIA AND REDUCING FOOD-RELATED BEHAVIORS IN PRADER-WILLI SYNDROME PATIENTS.” Plaintiffs own all substantial rights, title, and interest in and to the ’895 Patent.

## DRL’S ANDA NO. 221734

33. DRL’s ANDA includes proposed labeling that indicates that uses of DRL’s ANDA Products will be for the treatment of hyperphagia in adults and pediatric patients 4 years of age and older with Prader-Willi syndrome. This is the same indication as VYKAT® XR. DRL did not submit a statement under 21 U.S.C. § 355(j)(2)(A)(viii) seeking to carve out from its proposed labeling any method of use claimed in the ’384, ’823, ’348, or ’895 Patents. DRL’s proposed labeling for DRL’s ANDA Products is therefore not a “skinny” or “carved-out” label. It affirmatively instructs healthcare providers to administer DRL’s ANDA Products for the full labeled indication that DRL knows falls within the patented methods.

34. On information and belief, FDA has not approved DRL’s ANDA.

35. DRL sent Soleno a Notice Letter dated October 12, 2026 (the “Notice Letter”). Soleno received the Notice Letter on October 13, 2026. The Notice Letter represented that DRL had submitted DRL’s ANDA to FDA and that DRL’s ANDA included Paragraph IV Certifications with respect to each of the Asserted Patents, which are all listed in the Orange Book for VYKAT® XR.

36. According to applicable regulations, the Notice Letter was required to contain a detailed statement of the factual and legal basis for the applicant’s opinion that the patent

is invalid, unenforceable, or not infringed, including a claim-by-claim analysis that describes "for each claim of a patent alleged not to be infringed, a full and detailed explanation of why the claim is not infringed" and "for each claim of a patent alleged to be invalid or unenforceable, a full and detailed explanation of the grounds supporting the allegation." 21 C.F.R. § 314.95(c)(7); *see also* 21 C.F.R. § 314.52.

37. On information and belief, if FDA approves DRL's ANDA, DRL will engage in the commercial manufacture, use, sale, and/or offer for sale of DRL's ANDA Products within the United States, including within the State of Delaware, or will import DRL's ANDA Products into the United States, including the State of Delaware. The manufacture, use, sale, offer for sale, or importation of DRL's ANDA Products will directly infringe claims of the Asserted Patents, either literally or under the doctrine of equivalents, and DRL will actively induce and/or contribute to the infringement of those patents.

38. This action is being brought within 45 days of Plaintiffs' receipt of the Notice Letter. Accordingly, Plaintiffs are entitled to a stay of FDA approval pursuant to 21 U.S.C. § 355(j)(5)(B)(iii) until April 13, 2029.

39. On information and belief, DRL was aware of the Asserted Patents when it filed its ANDA with Paragraph IV Certifications.

40. On information and belief, DRL's ANDA refers to and relies upon the VYKAT® XR NDA and contains data that, according to DRL, demonstrate bioequivalence of DRL's ANDA Products and VYKAT® XR, *see* 21 U.S.C. § 355(j)(2); 21 C.F.R. § 314.94(a)(7), or, alternatively, DRL has sought a waiver of the requirement to demonstrate bioequivalence of DRL's ANDA Products and VYKAT® XR.

41. On information and belief, DRL intends to have healthcare providers use DRL's ANDA Products, if approved, as set forth in DRL's proposed labeling for DRL's ANDA Products. On information and belief, DRL's proposed labeling for DRL's ANDA Products will instruct healthcare providers to prescribe DRL's ANDA Products in the manner set forth therein. The Notice Letter did not advance any arguments based on any differences between VYKAT® XR's labeling and DRL's proposed labeling for DRL's ANDA Products. On information and belief, DRL's proposed labeling for DRL's ANDA Products will match VYKAT® XR's labeling in all relevant respects.

**COUNT 1 — INFRINGEMENT OF THE '777 PATENT**

42. Plaintiffs restate, reallege, and incorporate each of the preceding paragraphs as if fully set forth herein.

43. Claim 1 of the '777 Patent recites the following:

> Crystalline form B of 7-chloro-3-methyl-2H-1,2,4-benzothiadiazine dioxide:2-hydroxy-N,N,N-trimethyl ethanaminium (1:1) salt having characteristic peaks in a XRPD pattern substantially as shown in FIG. 13(b).

Claim 35 of the '777 Patent recites the following:

> A pharmaceutical composition comprising an effective amount of the crystalline form B of 7-chloro-3-methyl-2H-1,2,4-benzothiadiazine dioxide:2-hydroxy-N,N,N-trimethyl ethanaminium (1:1) salt of one of claims 1-7.

44. The compound recited in claims 1 and 35 of the '777 Patent, 7-chloro-3-methyl-2H-1,2,4-benzothiadiazine dioxide:2-hydroxy-N,N,N-trimethyl ethanaminium (1:1) salt, is diazoxide choline. The '777 Patent discloses two polymorphic forms of diazoxide choline, Forms A and B, and explains that Form B is "the thermodynamically more stable form" and that "Form A readily converts to Form B."

45. On information and belief, DRL's ANDA Products contain an effective amount of diazoxide choline in crystalline Form B, having characteristic peaks in an XRPD pattern substantially as shown in FIG. 13(b) of the '777 Patent.

46. The Notice Letter does not contend that DRL's ANDA Products fail to meet any limitation of any claim of the '777 Patent. Accordingly, on information and belief, DRL's ANDA Products are covered by one or more claims of the '777 Patent, including at least claims 1 and 35, either literally or under the doctrine of equivalents.

47. The purpose of submitting DRL's ANDA to FDA was to obtain approval under the FDCA, 21 U.S.C. § 301 *et seq.*, to engage in the commercial manufacture, use, sale, and/or offer for sale of DRL's ANDA Products prior to the expiration of the '777 Patent.

48. DRL's submission of its ANDA for the purpose of obtaining approval to engage in the commercial manufacture, use, sale, and/or offer for sale of DRL's ANDA Products prior to the expiration of the '777 Patent was an act of infringement of the '777 Patent under 35 U.S.C. § 271(e)(2)(A).

49. On information and belief, DRL intends to engage in the commercial manufacture, use, sale, and/or offer for sale of DRL's ANDA Products immediately and imminently upon approval of DRL's ANDA and any amendments thereto, *i.e.*, prior to the expiration of the '777 Patent.

50. On information and belief, if DRL's ANDA is approved, DRL will directly infringe one or more claims of the '777 Patent, including at least claims 1 and 35, under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by engaging in the commercial manufacture, use, sale, and/or offer for sale of DRL's ANDA Products, and/or importing DRL's ANDA Products into the United States, prior to the expiration of the '777 Patent.

51. On information and belief, DRL has knowledge of the ’777 Patent at least because the ’777 Patent is listed in the Orange Book for the VYKAT® XR (diazoxide choline) drug product. Notwithstanding this knowledge, DRL continues to assert its intent to engage in the commercial manufacture, use, sale, and/or offer for sale of DRL’s ANDA Products immediately and imminently upon approval of DRL’s ANDA and any amendments thereto.

52. DRL had actual and constructive notice of the ’777 Patent prior to submitting DRL’s ANDA, and was aware that the submission of DRL’s ANDA with the request for FDA approval prior to the expiration of the ’777 Patent would constitute an act of infringement of the ’777 Patent.

53. On information and belief, DRL plans and intends to, and will, actively induce infringement of the ’777 Patent when DRL’s ANDA and any amendments thereto are approved, by encouraging, aiding, and directing its affiliates, distributors, wholesalers, pharmacies, healthcare providers, and patients to use, offer to sell, sell, and/or import DRL’s ANDA Products, with knowledge of the ’777 Patent and with specific intent that those acts infringe at least claims 1 and 35 of the ’777 Patent. Further, on information and belief, DRL plans and intends to, and will, do so immediately and imminently upon approval of DRL’s ANDA and any amendments thereto.

54. On information and belief, DRL knows that the crystalline Form B diazoxide choline in DRL’s ANDA Products is especially made or adapted for use in infringing the ’777 Patent, and is not a staple article of commerce suitable for substantial noninfringing use. On information and belief, DRL plans and intends to, and will, contribute to infringement of the ’777 Patent immediately and imminently upon approval of DRL’s ANDA and any amendments thereto.

55. The foregoing actions by DRL constitute and/or will constitute infringement of the ’777 Patent, active inducement of infringement of the ’777 Patent, and contribution to the infringement of the ’777 Patent, either literally or under the doctrine of equivalents, pursuant to 35 U.S.C. § 271(a), (b), and (c).

56. DRL filed its ANDA without adequate justification for asserting that the claims of the ’777 Patent are invalid, unenforceable, and/or not infringed by the commercial manufacture, use, sale, and/or offer for sale of DRL’s ANDA Products. DRL’s conduct in certifying invalidity and/or noninfringement with respect to the ’777 Patent renders this case “exceptional” as set forth in 35 U.S.C. § 285, and entitles Plaintiffs to recovery of their attorneys’ fees and such other relief as this Court deems proper.

57. Unless DRL is enjoined from infringing the ’777 Patent and from actively inducing and contributing to infringement of the ’777 Patent, Plaintiffs will suffer irreparable injury. Plaintiffs have no adequate remedy at law, and considering the balance of hardships between Plaintiffs and DRL, a remedy in equity is warranted. Further, the public interest would not be disserved by the entry of a permanent injunction.

**COUNT 2 — INFRINGEMENT OF THE ’384 PATENT**

58. Plaintiffs restate, reallege, and incorporate each of the preceding paragraphs as if fully set forth herein.

59. Claim 1 of the ’384 Patent recites the following:

> A method of reducing one or more aggressive behaviors in a subject having Prader-Willi syndrome (PWS) or Smith-Magenis syndrome (SMS), the method comprising administering to said subject for at least 10 weeks a pharmaceutical formulation comprising an effective amount of diazoxide or a pharmaceutically acceptable salt thereof, wherein administration reduces one or more aggressive behaviors in the subject.

60. On information and belief, the use of DRL's ANDA Products in accordance with and as directed by DRL's proposed labeling for DRL's ANDA Products is covered by one or more claims of the '384 Patent, including at least claim 1, because the use of DRL's ANDA Products, in accordance with and as directed by DRL's proposed labeling for DRL's ANDA Products, involves administering to PWS patients, for at least 10 weeks, a pharmaceutical formulation comprising an effective amount of diazoxide choline. In the population of PWS patients who exhibit aggressive behaviors, that administration reduces one or more of those behaviors.

61. On information and belief, DRL's proposed labeling for DRL's ANDA Products is required to be, and is, materially the same as the labeling for VYKAT® XR, the Reference Listed Drug identified in DRL's ANDA. **Exhibit F** (VYKAT® XR labeling). The VYKAT® XR labeling indicates that VYKAT® XR is "for the treatment of hyperphagia in adults and pediatric patients 4 years of age and older with Prader-Willi syndrome (PWS)." The VYKAT® XR labeling contemplates chronic, long-term administration well in excess of 10 weeks. It describes a 13-week placebo-controlled study and a 16-week randomized withdrawal study that established efficacy in patients who had previously received VYKAT® XR for a mean of 3.3 years. It also reports that patients in the clinical development program received VYKAT® XR for up to 4.86 years (median 3.0 years). The '384 Patent describes the aggressive behaviors of PWS patients as including "aggressive, threatening, and destructive behaviors" and "temper outbursts." In the population of PWS patients who exhibit aggressive behaviors, those behaviors are frequently triggered by and tied to hyperphagia, including anger, temper tantrums, and meltdowns when food is denied. Accordingly, when such PWS patients are treated in accordance with DRL's proposed labeling for DRL's ANDA Products, administration reduces one or more aggressive behaviors.

Further, DRL's intent to reduce the anger, temper outbursts, and other aggressive behaviors that those patients exhibit is demonstrated by the instructions and encouragement that DRL gives to healthcare providers to treat such patients in accordance with DRL's proposed labeling for DRL's ANDA Products.

62. On information and belief, when healthcare providers prescribe DRL's ANDA Products to PWS patients with hyperphagia, those healthcare providers will direct or control the performance of each step of the claimed method. Those steps include administration of a pharmaceutical formulation comprising an effective amount of diazoxide choline to a PWS patient for at least 10 weeks. Patients who take DRL's ANDA Products will do so under the direction or control of their prescribing healthcare providers, who will establish the treatment regimen, including the dose and duration of administration. Accordingly, the prescribing healthcare providers will perform, or direct or control the performance of, each and every step of the methods claimed in the '384 Patent. They will therefore directly infringe the '384 Patent when they prescribe DRL's ANDA Products in accordance with DRL's proposed labeling for DRL's ANDA Products.

63. On information and belief, DRL intends to sell DRL's ANDA Products with proposed labeling that includes instructions to administer diazoxide choline to treat hyperphagia in PWS patients in a manner that will infringe at least claim 1 of the '384 Patent, either literally or under the doctrine of equivalents.

64. DRL's intent to induce treatment of PWS patients is an intent to induce reduction of aggressive behaviors in the population of PWS patients who exhibit them. In those patients, aggressive behaviors such as anger, temper outbursts, and meltdowns when food is denied are part of the clinical presentation of PWS and are tied to hyperphagia. Healthcare providers

treating those patients seek to reduce those behaviors. DRL's proposed labeling for DRL's ANDA Products instructs such providers to administer DRL's ANDA Products to those patients on a chronic, long-term basis. It thereby encourages them to administer DRL's ANDA Products for the purpose of, and with the result of, reducing those behaviors.

65. DRL knows and specifically intends that DRL's ANDA Products will be administered to PWS patients who exhibit aggressive behaviors. DRL characterizes behavioral symptoms of PWS as including compulsions, mood swings, psychotic behavior, and aggressive behaviors. DRL nonetheless intends to market DRL's ANDA Products for chronic administration to the entire PWS patient population covered by the labeled indication, including those patients.

66. The purpose of submitting DRL's ANDA to FDA was to obtain approval under the FDCA, 21 U.S.C. § 301 *et seq.*, to engage in the commercial manufacture, use, sale, and/or offer for sale of DRL's ANDA Products prior to the expiration of the '384 Patent.

67. DRL's submission of its ANDA for the purpose of obtaining approval to engage in the commercial manufacture, use, sale, and/or offer for sale of DRL's ANDA Products prior to the expiration of the '384 Patent was an act of infringement of the '384 Patent under 35 U.S.C. § 271(e)(2)(A).

68. On information and belief, DRL intends to engage in the commercial manufacture, use, sale, and/or offer for sale of DRL's ANDA Products with DRL's proposed labeling for DRL's ANDA Products immediately and imminently upon approval of DRL's ANDA and any amendments thereto, *i.e.*, prior to the expiration of the '384 Patent.

69. On information and belief, DRL has knowledge of the '384 Patent at least because the '384 Patent is listed in the Orange Book for the VYKAT® XR (diazoxide choline) drug product. Notwithstanding this knowledge, DRL continues to assert its intent to engage in the

commercial manufacture, use, sale, and/or offer for sale of DRL's ANDA Products with DRL's proposed labeling for DRL's ANDA Products immediately and imminently upon approval of DRL's ANDA and any amendments thereto.

70. DRL had actual and constructive notice of the '384 Patent prior to submitting DRL's ANDA, and was aware that the submission of DRL's ANDA with the request for FDA approval prior to the expiration of the '384 Patent would constitute an act of infringement of the '384 Patent.

71. On information and belief, DRL plans and intends to, and will, actively induce infringement of the '384 Patent when DRL's ANDA and any amendments thereto are approved, by selling DRL's ANDA Products with DRL's proposed labeling for DRL's ANDA Products that instructs healthcare providers to administer diazoxide choline to PWS patients who exhibit aggressive behaviors, on a chronic, long-term basis exceeding 10 weeks, in a manner that infringes at least claim 1 of the '384 Patent, with specific intent to induce infringement of the '384 Patent. In intending that healthcare providers treat PWS patients who exhibit aggressive behaviors with DRL's ANDA Products, DRL intends that such administration reduce those behaviors. Further, on information and belief, DRL plans and intends to, and will, do so immediately and imminently upon approval of DRL's ANDA and any amendments thereto.

72. On information and belief, DRL knows that DRL's ANDA Products are especially made or adapted for use in infringing the '384 Patent, and that DRL's ANDA Products are not staple articles of commerce suitable for substantial noninfringing use. On information and belief, DRL plans and intends to, and will, contribute to infringement of the '384 Patent immediately and imminently upon approval of DRL's ANDA and any amendments thereto.

73. The foregoing actions by DRL constitute and/or will constitute infringement of the ’384 Patent, active inducement of infringement of the ’384 Patent, and contribution to the infringement of the ’384 Patent, either literally or under the doctrine of equivalents, pursuant to 35 U.S.C. § 271(b) and (c).

74. DRL filed its ANDA without adequate justification for asserting that the claims of the ’384 Patent are invalid, unenforceable, and/or not infringed by the commercial manufacture, use, sale, and/or offer for sale of DRL’s ANDA Products. DRL’s conduct in certifying invalidity and/or noninfringement with respect to the ’384 Patent renders this case “exceptional” as set forth in 35 U.S.C. § 285, and entitles Plaintiffs to recovery of their attorneys’ fees and such other relief as this Court deems proper.

75. Unless DRL is enjoined from infringing the ’384 Patent and from actively inducing and contributing to infringement of the ’384 Patent, Plaintiffs will suffer irreparable injury. Plaintiffs have no adequate remedy at law, and considering the balance of hardships between Plaintiffs and DRL, a remedy in equity is warranted. Further, the public interest would not be disserved by the entry of a permanent injunction.

**COUNT 3 — INFRINGEMENT OF THE ’823 PATENT**

76. Plaintiffs restate, reallege, and incorporate each of the preceding paragraphs as if fully set forth herein.

77. Claim 1 of the ’823 Patent recites the following:

> A method of treating a subject having Prader-Willi Syndrome (PWS), the method comprising administering to said subject for at least 10 weeks a pharmaceutical formulation comprising an effective amount of diazoxide, or a pharmaceutically acceptable salt thereof, wherein administration reduces one or more aggressive behaviors in the subject.

78. On information and belief, the use of DRL's ANDA Products in accordance with and as directed by the proposed labeling is covered by one or more claims of the '823 Patent, including at least claim 1, because the use of DRL's ANDA Products, in accordance with and as directed by DRL's proposed labeling for DRL's ANDA Products, involves administering to PWS patients, for at least 10 weeks, a pharmaceutical formulation comprising an effective amount of diazoxide choline to treat PWS. In the population of PWS patients who exhibit aggressive behaviors, that administration reduces one or more of those behaviors.

79. On information and belief, DRL's proposed labeling for DRL's ANDA Products is required to be, and is, materially the same as the labeling for VYKAT® XR, the Reference Listed Drug identified in DRL's ANDA. **Exhibit F** (VYKAT® XR labeling). The VYKAT® XR labeling indicates that VYKAT® XR is "for the treatment of hyperphagia in adults and pediatric patients 4 years of age and older with Prader-Willi syndrome (PWS)." The VYKAT® XR labeling contemplates chronic, long-term administration well in excess of 10 weeks. It describes a 13-week placebo-controlled study and a 16-week randomized withdrawal study that established efficacy in patients who had previously received VYKAT® XR for a mean of 3.3 years. It also reports that patients in the clinical development program received VYKAT® XR for up to 4.86 years (median 3.0 years). The '823 Patent describes the aggressive behaviors of PWS patients as including "aggressive, threatening, and destructive behaviors" and "temper outbursts." In the population of PWS patients who exhibit aggressive behaviors, those behaviors are frequently triggered by and tied to hyperphagia, including anger, temper tantrums, and meltdowns when food is denied. Accordingly, when such PWS patients are treated in accordance with DRL's proposed labeling for DRL's ANDA Products, administration reduces one or more aggressive behaviors. Further, DRL's intent to reduce the anger, temper outbursts, and other aggressive behaviors that

those patients exhibit is demonstrated by the instructions and encouragement that DRL gives to healthcare providers to treat such patients in accordance with DRL's proposed labeling for DRL's ANDA Products.

80. On information and belief, when healthcare providers prescribe DRL's ANDA Products to PWS patients with hyperphagia, those healthcare providers will direct or control the performance of each step of the claimed method. Those steps include administration of a pharmaceutical formulation comprising an effective amount of diazoxide choline to a PWS patient for at least 10 weeks. Patients who take DRL's ANDA Products will do so under the direction or control of their prescribing healthcare providers, who will establish the treatment regimen, including the dose and duration of administration. Accordingly, the prescribing healthcare providers will perform, or direct or control the performance of, each and every step of the methods claimed in the '823 Patent. They will therefore directly infringe the '823 Patent when they prescribe DRL's ANDA Products in accordance with DRL's proposed labeling for DRL's ANDA Products.

81. On information and belief, DRL intends to sell DRL's ANDA Products with proposed labeling that includes instructions to administer diazoxide choline to treat hyperphagia in PWS patients in a manner that will infringe at least claim 1 of the '823 Patent, either literally or under the doctrine of equivalents.

82. DRL's intent to induce treatment of PWS patients is an intent to induce reduction of aggressive behaviors in the population of PWS patients who exhibit them. In those patients, aggressive behaviors such as anger, temper outbursts, and meltdowns when food is denied are part of the clinical presentation of PWS and are tied to hyperphagia. Healthcare providers treating those patients seek to reduce those behaviors. DRL's proposed labeling for DRL's ANDA

Products instructs such providers to administer DRL's ANDA Products to those patients on a chronic, long-term basis. It thereby encourages them to administer DRL's ANDA Products for the purpose of, and with the result of, reducing those behaviors.

83. DRL knows and specifically intends that DRL's ANDA Products will be administered to PWS patients who exhibit aggressive behaviors. DRL characterizes behavioral symptoms of PWS as including compulsions, mood swings, psychotic behavior, and aggressive behaviors. DRL nonetheless intends to market DRL's ANDA Products for chronic administration to the entire PWS patient population covered by the labeled indication, including those patients.

84. The purpose of submitting DRL's ANDA to FDA was to obtain approval under the FDCA, 21 U.S.C. § 301 *et seq.*, to engage in the commercial manufacture, use, sale, and/or offer for sale of DRL's ANDA Products prior to the expiration of the '823 Patent.

85. DRL's submission of its ANDA for the purpose of obtaining approval to engage in the commercial manufacture, use, sale, and/or offer for sale of DRL's ANDA Products prior to the expiration of the '823 Patent was an act of infringement of the '823 Patent under 35 U.S.C. § 271(e)(2)(A).

86. On information and belief, DRL intends to engage in the commercial manufacture, use, sale, and/or offer for sale of DRL's ANDA Products with DRL's proposed labeling for DRL's ANDA Products immediately and imminently upon approval of DRL's ANDA and any amendments thereto, *i.e.*, prior to the expiration of the '823 Patent.

87. On information and belief, DRL has knowledge of the '823 Patent at least because the '823 Patent is listed in the Orange Book for the VYKAT® XR (diazoxide choline) drug product. Notwithstanding this knowledge, DRL continues to assert its intent to engage in the commercial manufacture, use, sale, and/or offer for sale of DRL's ANDA Products with DRL's

proposed labeling for DRL's ANDA Products immediately and imminently upon approval of DRL's ANDA and any amendments thereto.

88. DRL had actual and constructive notice of the '823 Patent prior to submitting DRL's ANDA, and was aware that the submission of DRL's ANDA with the request for FDA approval prior to the expiration of the '823 Patent would constitute an act of infringement of the '823 Patent.

89. On information and belief, DRL plans and intends to, and will, actively induce infringement of the '823 Patent when DRL's ANDA and any amendments thereto are approved, by selling DRL's ANDA Products with DRL's proposed labeling for DRL's ANDA Products that instructs healthcare providers to administer diazoxide choline to PWS patients who exhibit aggressive behaviors, on a chronic, long-term basis exceeding 10 weeks, in a manner that infringes at least claim 1 of the '823 Patent, with specific intent to induce infringement of the '823 Patent. In intending that healthcare providers treat PWS patients who exhibit aggressive behaviors with DRL's ANDA Products, DRL intends that such administration reduce those behaviors. Further, on information and belief, DRL plans and intends to, and will, do so immediately and imminently upon approval of DRL's ANDA and any amendments thereto.

90. On information and belief, DRL knows that DRL's ANDA Products are especially made or adapted for use in infringing the '823 Patent, and that DRL's ANDA Products are not staple articles of commerce suitable for substantial noninfringing use. On information and belief, DRL plans and intends to, and will, contribute to infringement of the '823 Patent immediately and imminently upon approval of DRL's ANDA and any amendments thereto.

91. The foregoing actions by DRL constitute and/or will constitute infringement of the '823 Patent, active inducement of infringement of the '823 Patent, and

contribution to the infringement of the '823 Patent, either literally or under the doctrine of equivalents, pursuant to 35 U.S.C. § 271(b) and (c).

92. DRL filed its ANDA without adequate justification for asserting that the claims of the '823 Patent are invalid, unenforceable, and/or not infringed by the commercial manufacture, use, sale, and/or offer for sale of DRL's ANDA Products. DRL's conduct in certifying invalidity and/or noninfringement with respect to the '823 Patent renders this case "exceptional" as set forth in 35 U.S.C. § 285, and entitles Plaintiffs to recovery of their attorneys' fees and such other relief as this Court deems proper.

93. Unless DRL is enjoined from infringing the '823 Patent and from actively inducing and contributing to infringement of the '823 Patent, Plaintiffs will suffer irreparable injury. Plaintiffs have no adequate remedy at law, and considering the balance of hardships between Plaintiffs and DRL, a remedy in equity is warranted. Further, the public interest would not be disserved by the entry of a permanent injunction.

**COUNT 4 — INFRINGEMENT OF THE '348 PATENT**

94. Plaintiffs restate, reallege, and incorporate each of the preceding paragraphs as if fully set forth herein.

95. Claim 1 of the '348 Patent recites the following:

> A method of treating hyperphagia in a subject having Prader-Willi Syndrome (PWS), the method comprising orally administering to said subject once per day a pharmaceutical formulation comprising an effective amount of diazoxide choline, wherein administration reduces hyperphagia and one or more aggressive behaviors in the subject.

96. On information and belief, the use of DRL's ANDA Products in accordance with and as directed by the proposed labeling is covered by one or more claims of the '348 Patent, including at least claim 1, because the use of DRL's ANDA Products, in accordance with and as

directed by DRL's proposed labeling for DRL's ANDA Products, involves orally administering to PWS patients, once daily, a pharmaceutical formulation comprising an effective amount of diazoxide choline to treat hyperphagia. In the population of PWS patients who exhibit aggressive behaviors, that administration reduces hyperphagia and one or more of those behaviors.

97. On information and belief, DRL's proposed labeling for DRL's ANDA Products is required to be, and is, materially the same as the labeling for VYKAT® XR, the Reference Listed Drug identified in DRL's ANDA. **Exhibit F** (VYKAT® XR labeling). The VYKAT® XR labeling indicates that VYKAT® XR is "for the treatment of hyperphagia in adults and pediatric patients 4 years of age and older with Prader-Willi syndrome (PWS)." The '348 Patent describes the aggressive behaviors of PWS patients as including "aggressive, threatening, and destructive behaviors" and "temper outbursts." In the population of PWS patients who exhibit aggressive behaviors, those behaviors are frequently triggered by and tied to hyperphagia, including anger, temper tantrums, and meltdowns when food is denied. Accordingly, when such PWS patients are treated in accordance with DRL's proposed labeling for DRL's ANDA Products, administration reduces one or more aggressive behaviors. Further, DRL's intent to reduce the anger, temper outbursts, and other aggressive behaviors that those patients exhibit is demonstrated by the instructions and encouragement that DRL gives to healthcare providers to treat such patients in accordance with DRL's proposed labeling for DRL's ANDA Products.

98. On information and belief, when healthcare providers prescribe DRL's ANDA Products to PWS patients with hyperphagia, those healthcare providers will direct or control the performance of each step of the claimed method. Those steps include once-daily oral administration of a pharmaceutical formulation comprising an effective amount of diazoxide choline to a PWS patient to treat hyperphagia. Patients who take DRL's ANDA Products will do

so under the direction or control of their prescribing healthcare providers, who will establish the treatment regimen, including the dose and the once-daily oral administration. Accordingly, the prescribing healthcare providers will perform, or direct or control the performance of, each and every step of the methods claimed in the ’348 Patent. They will therefore directly infringe the ’348 Patent when they prescribe DRL’s ANDA Products in accordance with DRL’s proposed labeling for DRL’s ANDA Products.

99. On information and belief, DRL intends to sell DRL’s ANDA Products with DRL’s proposed labeling for DRL’s ANDA Products that includes instructions to administer diazoxide choline to treat hyperphagia in PWS patients in a manner that will infringe at least claim 1 of the ’348 Patent, either literally or under the doctrine of equivalents.

100. DRL’s intent to induce treatment of hyperphagia in PWS patients is an intent to induce reduction of aggressive behaviors in the population of PWS patients who exhibit them. In those patients, aggressive behaviors such as anger, temper outbursts, and meltdowns when food is denied are part of the clinical presentation of PWS and are tied to hyperphagia. Healthcare providers treating those patients seek to reduce those behaviors. DRL’s proposed labeling for DRL’s ANDA Products instructs such providers to administer DRL’s ANDA Products to those patients. It thereby encourages them to administer DRL’s ANDA Products for the purpose of, and with the result of, reducing those behaviors.

101. DRL knows and specifically intends that DRL’s ANDA Products will be administered to PWS patients who exhibit aggressive behaviors. DRL characterizes behavioral symptoms of PWS as including compulsions, mood swings, psychotic behavior, and aggressive behaviors. DRL nonetheless intends to market DRL’s ANDA Products for chronic administration to the entire PWS patient population covered by the labeled indication, including those patients.

102. The purpose of submitting DRL's ANDA to FDA was to obtain approval under the FDCA, 21 U.S.C. § 301 *et seq.*, to engage in the commercial manufacture, use, sale, and/or offer for sale of DRL's ANDA Products prior to the expiration of the '348 Patent.

103. DRL's submission of its ANDA for the purpose of obtaining approval to engage in the commercial manufacture, use, sale, and/or offer for sale of DRL's ANDA Products prior to the expiration of the '348 Patent was an act of infringement of the '348 Patent under 35 U.S.C. § 271(e)(2)(A).

104. On information and belief, DRL intends to engage in the commercial manufacture, use, sale, and/or offer for sale of DRL's ANDA Products with DRL's proposed labeling for DRL's ANDA Products immediately and imminently upon approval of DRL's ANDA and any amendments thereto, *i.e.*, prior to the expiration of the '348 Patent.

105. On information and belief, DRL has knowledge of the '348 Patent at least because the '348 Patent is listed in the Orange Book for the VYKAT® XR (diazoxide choline) drug product. Notwithstanding this knowledge, DRL continues to assert its intent to engage in the commercial manufacture, use, sale, and/or offer for sale of DRL's ANDA Products with DRL's proposed labeling for DRL's ANDA Products immediately and imminently upon approval of DRL's ANDA and any amendments thereto.

106. DRL had actual and constructive notice of the '348 Patent prior to submitting DRL's ANDA, and was aware that the submission of DRL's ANDA with the request for FDA approval prior to the expiration of the '348 Patent would constitute an act of infringement of the '348 Patent.

107. On information and belief, DRL plans and intends to, and will, actively induce infringement of the '348 Patent when DRL's ANDA and any amendments thereto are

approved, by selling DRL's ANDA Products with DRL's proposed labeling for DRL's ANDA Products that instructs healthcare providers to administer diazoxide choline orally once daily to treat hyperphagia in PWS patients who exhibit aggressive behaviors, in a manner that infringes at least claim 1 of the '348 Patent, with specific intent to induce infringement of the '348 Patent. In intending that healthcare providers treat hyperphagia in PWS patients, DRL intends that they reduce the aggressive behaviors that result from hyperphagia. Further, on information and belief, DRL plans and intends to, and will, do so immediately and imminently upon approval of DRL's ANDA and any amendments thereto.

108. On information and belief, DRL knows that DRL's ANDA Products are especially made or adapted for use in infringing the '348 Patent, and that DRL's ANDA Products are not staple articles of commerce suitable for substantial noninfringing use. On information and belief, DRL plans and intends to, and will, contribute to infringement of the '348 Patent immediately and imminently upon approval of DRL's ANDA and any amendments thereto.

109. The foregoing actions by DRL constitute and/or will constitute infringement of the '348 Patent, active inducement of infringement of the '348 Patent, and contribution to the infringement of the '348 Patent, either literally or under the doctrine of equivalents, pursuant to 35 U.S.C. § 271(b) and (c).

110. DRL filed its ANDA without adequate justification for asserting that the claims of the '348 Patent are invalid, unenforceable, and/or not infringed by the commercial manufacture, use, sale, and/or offer for sale of DRL's ANDA Products. DRL's conduct in certifying invalidity and/or noninfringement with respect to the '348 Patent renders this case "exceptional" as set forth in 35 U.S.C. § 285, and entitles Plaintiffs to recovery of their attorneys' fees and such other relief as this Court deems proper.

111. Unless DRL is enjoined from infringing the ’348 Patent and from actively inducing and contributing to infringement of the ’348 Patent, Plaintiffs will suffer irreparable injury. Plaintiffs have no adequate remedy at law, and considering the balance of hardships between Plaintiffs and DRL, a remedy in equity is warranted. Further, the public interest would not be disserved by the entry of a permanent injunction.

**COUNT 5 — INFRINGEMENT OF THE ’895 PATENT**

112. Plaintiffs restate, reallege, and incorporate each of the preceding paragraphs as if fully set forth herein.

113. Claim 16 of the ’895 Patent depends from claim 1 and incorporates all of its limitations. Claim 1 of the ’895 Patent recites the following:

> A method of treating hyperphagia in a subject having Prader-Willi Syndrome (PWS), the method comprising administering to said subject once per day a pharmaceutical formulation comprising an effective amount of diazoxide choline, wherein administration reduces hyperphagia and one or more food related behaviors in the subject.

Claim 16 of the ’895 Patent recites the following:

> The method of claim 1, wherein the administration of diazoxide choline is initiated at a starting dose of diazoxide choline and then titrated every two weeks to reach a maintenance dose of diazoxide choline.

114. On information and belief, the use of DRL’s ANDA Products in accordance with and as directed by DRL’s proposed labeling for DRL’s ANDA Products is covered by one or more claims of the ’895 Patent, including at least claim 16, because the use of DRL’s ANDA Products, in accordance with and as directed by DRL’s proposed labeling for DRL’s ANDA Products, involves once-daily administration of a pharmaceutical formulation comprising an effective amount of diazoxide choline to treat hyperphagia in PWS patients, which reduces hyperphagia and one or more food-related behaviors. Hyperphagia in PWS manifests through

food-related behaviors, such as stealing food, digging through trash for food, and getting up at night to eat, so treating hyperphagia in accordance with DRL's proposed labeling for DRL's ANDA Products necessarily means reducing one or more food-related behaviors. A healthcare provider cannot treat a PWS patient's hyperphagia without intending to reduce the food-seeking, food-stealing, and other food-driven behaviors through which hyperphagia manifests and by which its improvement is assessed.

115. The Notice Letter does not contend that DRL's ANDA Products fail to meet any limitation of any claim of the '895 Patent. Accordingly, on information and belief, DRL's ANDA Products are covered by one or more claims of the '895 Patent, including at least claim 16, either literally or under the doctrine of equivalents.

116. On information and belief, DRL's proposed labeling for DRL's ANDA Products is required to be, and is, materially the same as the labeling for VYKAT® XR, the Reference Listed Drug identified in DRL's ANDA. **Exhibit F** (VYKAT® XR labeling). The VYKAT® XR labeling indicates that VYKAT® XR is "for the treatment of hyperphagia in adults and pediatric patients 4 years of age and older with Prader-Willi syndrome (PWS)." The claimed dosing regimen in the '895 Patent is coextensive with the VYKAT® XR labeling. On information and belief, DRL's proposed labeling for DRL's ANDA Products instructs healthcare providers to initiate diazoxide choline at a starting dose and to titrate the dose every two weeks until a maintenance dose is reached.

117. On information and belief, when healthcare providers prescribe DRL's ANDA Products to PWS patients with hyperphagia, those healthcare providers will direct or control the performance of each step of the claimed method. Those steps include once-daily administration of diazoxide choline, initiation at a starting dose, and titration every two weeks to

a maintenance dose. Patients who take DRL's ANDA Products will do so under the direction or control of their prescribing healthcare providers, who will establish the treatment regimen, set the starting dose, and determine each two-week dose escalation. Accordingly, the prescribing healthcare providers will perform, or direct or control the performance of, each and every step of the methods claimed in the '895 Patent. They will therefore directly infringe the '895 Patent when they prescribe DRL's ANDA Products in accordance with DRL's proposed labeling for DRL's ANDA Products.

118. On information and belief, DRL intends to sell DRL's ANDA Products with DRL's proposed labeling for DRL's ANDA Products that includes instructions to administer diazoxide choline to treat hyperphagia in PWS patients in a manner that will infringe at least claim 16 of the '895 Patent, either literally or under the doctrine of equivalents.

119. DRL's intent to induce treatment of hyperphagia is an intent to induce reduction of food-related behaviors. Because hyperphagia in PWS manifests as, and is measured by, food-related behaviors, labeling that instructs healthcare providers to treat hyperphagia necessarily instructs and encourages them to reduce those behaviors. The reduction of food-related behaviors is not an incidental or unintended side effect of following DRL's proposed labeling for DRL's ANDA Products—it is the very clinical improvement that treating hyperphagia is intended to achieve, and it is how prescribers, patients, and caregivers will determine whether the treatment is working.

120. DRL knows and specifically intends that DRL's ANDA Products will be administered to PWS patients to treat hyperphagia and reduce food-related behaviors. DRL contends that once-daily administration of diazoxide choline for the treatment or reduction of PWS and/or hyperphagia in a PWS patient would have inherently reduced one or more food-related

behaviors. DRL thus admits that reducing hyperphagia and reducing food-related behaviors are one and the same result of the same administration. Having made that admission, DRL cannot plausibly contend that it intends healthcare providers to treat hyperphagia with DRL's ANDA Products without intending them to reduce food-related behaviors.

121. The purpose of submitting DRL's ANDA to FDA was to obtain approval under the FDCA, 21 U.S.C. § 301 *et seq.*, to engage in the commercial manufacture, use, sale, and/or offer for sale of DRL's ANDA Products prior to the expiration of the '895 Patent.

122. DRL's submission of its ANDA for the purpose of obtaining approval to engage in the commercial manufacture, use, sale, and/or offer for sale of DRL's ANDA Products prior to the expiration of the '895 Patent was an act of infringement of the '895 Patent under 35 U.S.C. § 271(e)(2)(A).

123. On information and belief, DRL intends to engage in the commercial manufacture, use, sale, and/or offer for sale of DRL's ANDA Products with DRL's proposed labeling for DRL's ANDA Products immediately and imminently upon approval of DRL's ANDA and any amendments thereto, *i.e.*, prior to the expiration of the '895 Patent.

124. On information and belief, DRL has knowledge of the '895 Patent at least because the '895 Patent is listed in the Orange Book for the VYKAT® XR (diazoxide choline) drug product. Notwithstanding this knowledge, DRL continues to assert its intent to engage in the commercial manufacture, use, sale, and/or offer for sale of DRL's ANDA Products with DRL's proposed labeling for DRL's ANDA Products immediately and imminently upon approval of DRL's ANDA and any amendments thereto.

125. DRL had actual and constructive notice of the '895 Patent prior to submitting DRL's ANDA, and was aware that the submission of DRL's ANDA with the request

for FDA approval prior to the expiration of the ’895 Patent would constitute an act of infringement of the ’895 Patent.

126. On information and belief, DRL plans and intends to, and will, actively induce infringement of the ’895 Patent when DRL’s ANDA and any amendments thereto are approved, by selling DRL’s ANDA Products with proposed labeling that instructs healthcare providers to administer diazoxide choline once daily to treat hyperphagia in PWS patients, initiated at a starting dose and titrated every two weeks to a maintenance dose, in a manner that infringes at least claim 16 of the ’895 Patent, with specific intent to induce infringement of the ’895 Patent. In intending that healthcare providers treat hyperphagia in PWS patients, DRL necessarily intends that they reduce the food-related behaviors that constitute and result from that hyperphagia. Further, on information and belief, DRL plans and intends to, and will, do so immediately and imminently upon approval of DRL’s ANDA and any amendments thereto.

127. On information and belief, DRL knows that DRL’s ANDA Products are especially made or adapted for use in infringing the ’895 Patent, and that DRL’s ANDA Products are not staple articles of commerce suitable for substantial noninfringing use. On information and belief, DRL plans and intends to, and will, contribute to infringement of the ’895 Patent immediately and imminently upon approval of DRL’s ANDA and any amendments thereto.

128. The foregoing actions by DRL constitute and/or will constitute infringement of the ’895 Patent, active inducement of infringement of the ’895 Patent, and contribution to the infringement of the ’895 Patent, either literally or under the doctrine of equivalents, pursuant to 35 U.S.C. § 271(b) and (c).

129. DRL filed its ANDA without adequate justification for asserting that the claims of the ’895 Patent are invalid, unenforceable, and/or not infringed by the commercial

manufacture, use, sale, and/or offer for sale of DRL's ANDA Products. DRL's conduct in certifying invalidity and/or noninfringement with respect to the '895 Patent renders this case "exceptional" as set forth in 35 U.S.C. § 285, and entitles Plaintiffs to recovery of their attorneys' fees and such other relief as this Court deems proper.

130. Unless DRL is enjoined from infringing the '895 Patent and from actively inducing and contributing to infringement of the '895 Patent, Plaintiffs will suffer irreparable injury. Plaintiffs have no adequate remedy at law, and considering the balance of hardships between Plaintiffs and DRL, a remedy in equity is warranted. Further, the public interest would not be disserved by the entry of a permanent injunction.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request the following relief:

(A) A judgment that DRL has infringed the Asserted Patents under 35 U.S.C. § 271(e)(2)(A);

(B) A judgment and order, pursuant to 35 U.S.C. § 271(e)(4)(A), that the effective date of any FDA approval of DRL's ANDA shall be no earlier than the latest expiration date of the Asserted Patents, including any additional exclusivity period applicable to those patents;

(C) A judgment, pursuant to 35 U.S.C. § 271(a), (b), and/or (c), that making, using, selling, offering to sell, or importing DRL's ANDA Products, or inducing or contributing to such conduct, would constitute infringement of the Asserted Patents;

(D) Entry of a permanent injunction, pursuant to 35 U.S.C. § 271(e)(4)(B) and § 283, enjoining DRL, its officers, agents, employees, parents, affiliates, and subsidiaries, and all persons and entities acting in concert with DRL or on its behalf from engaging in the commercial manufacture, use, sale, and/or offer for sale of DRL's ANDA Products within the United States,

or importing DRL's ANDA Products into the United States, until the day after the expiration of the Asserted Patents, including any additional exclusivity period applicable to those patents, and from otherwise infringing the claims of the Asserted Patents;

(E) An award of damages or other relief, pursuant to 35 U.S.C. § 271(e)(4)(C), if DRL engages in the commercial manufacture, use, sale, and/or offer for sale of DRL's ANDA Products, or any product that infringes the Asserted Patents, or induces or contributes to such conduct, prior to the expiration of the Asserted Patents, including any additional exclusivity period applicable to those patents;

(F) A finding that this is an exceptional case, and an award of attorneys' fees in this action pursuant to 35 U.S.C. § 285;

(G) Costs and expenses in this action; and

(H) Such other and further relief as the Court deems just and proper.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Rodger D. Smith II*

Rodger D. Smith II (#3778)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
rsmith@morrisnichols.com

*Attorneys for Plaintiffs Soleno Therapeutics, Inc. and Neurocrine Biosciences, Inc.*

OF COUNSEL:

Michael A. Morin
Kelly A. Welsh
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
(202) 637-2200

Marc N. Zubick
Alex Grabowski
Yiwei (Lily) Jiang
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
(312) 876-7700

Yi Sun
LATHAM & WATKINS LLP
12670 High Bluff Drive
San Diego, CA 92130
(858) 523-5400

Alyssa A. Dolan
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200

November 24, 2026